**In re QUALITY SYSTEMS, INC.
SECURITIES LITIGATION.**

**Case No. SACV 13–01818–CJC(JPRx).**

United States District Court,
C.D. California,
Southern Division.

Signed Oct. 20, 2014.

Order Denying Reconsideration
Jan. 5, 2015.

Peter Allen Wald, Andrew Gray, Michele D. Johnson, Latham and Watkins LLP, Costa Mesa, CA, for Quality Systems, Inc. Securities Litigation.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

CORMAC J. CARNEY, District Judge.

### I. INTRODUCTION

This is a shareholder securities class action brought against Quality Systems, Inc. ("QSI") and its high-ranking directors and officers, Sheldon Razin, Steven Plochocki, and Paul Holt (collectively, "Defendants"). The claims are asserted on behalf of all persons or entities who, during May 26, 2011 through July 25, 2012 (the "Class Period"), purchased or otherwise acquired the common stock of QSI (collectively, "Plaintiffs"). The Amended Complaint alleges violations of sections 10(b) and 20(a)

of the Securities Exchange Act of 1934 ("SEA"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5, 17 C.F.R. § 240.10b–5, in connection with Defendants' purportedly false and misleading statements regarding revenue forecasts, sales pipeline figures, and greenfield sales projections. (Dkt. No. 26 Amended Compl. ["AC"].) Before the Court is Defendants' motion to dismiss the Amended Complaint. (Dkt. No. 29 ["Defs.' Mot."].) Defendants argue that the Amended Complaint fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b). For the following reasons, Defendants' motion is GRANTED WITH PREJUDICE.

## II. BACKGROUND

QSI is a publicly-traded company that develops and markets practice management and electronic health records ("EHR") software to medical and dental care providers, including scheduling and billing related software. (AC ¶ 23.) Defendant Plochocki served as the Chief Executive Officer and a member of the Board during the Class Period; he has also been serving as President since January 25, 2012. (AC ¶ 24.) Defendant Holt served as the Chief Financial Officer during the Class Period. (AC ¶ 25.) Defendant Razin is the founder of QSI and served as the Chairman of the Board during the Class Period. (AC ¶ 26.) The Amended Complaint alleges that, as high-ranking officers and directors, Defendants Plochocki, Holt,

and Razin (the "Individual Defendants") had direct involvement and control in the day-to-day operations of QSI and had access to "real-time" data about QSI's business and sales. (AC ¶ 2, 27.)

In 2009, Congress passed the American Recovery and Reinvestment Act ("ARRA"), which provided $60 billion in government funds to incentivize healthcare providers to transition from paper to electronically based practices.[1] (AC ¶ 30.) QSI referred to the ARRA as the "number one market driver" in the healthcare information technology industry. (AC ¶ 31.) QSI's business is heavily dependent on its ability to book new systems sales, which in turn expands its installed base to earn maintenance revenue. (AC ¶ 34.) In light of the ARRA, QSI particularly relied on "greenfield" sales—sales made to customers who previously had no EHR system in place at all. (AC ¶ 38.) The Amended Complaint alleges that, in connection with its favorable projections, QSI frequently cited the high potential for sales in the greenfield market. (AC ¶¶ 38–39.) In addition to greenfield sales, QSI tracked its sales pipeline, which represents the value of all deals that QSI believes it will close within four to eight months.[2] (AC ¶ 41.)

Plaintiffs contend that, during the Class Period, Defendants misrepresented the strength of QSI's sales figures, sales prospects, greenfield sales, and pipeline figures, and issued highly favorable earnings per share (EPS) guidance for fiscal years 2012 ("FY2012") and 2013 ("FY2013").[3]

---

**1.** For the first five years of the ARRA, healthcare providers adopting certified electronic management and health record systems are eligible for government subsidies; beginning in 2015, healthcare providers who have not adopted certified systems will receive a reduction in government reimbursement. (AC ¶ 30.)

**2.** The sales pipeline is divided into four categories. Deals in Category 1 are expected to close in three to four months with 70% certainty; Category 2, six to eight months with 70% certainty; Categories 3 and 4 contain deals that are not expected to close within eight months and are not included in the publicly reported pipeline number. (AC ¶ 41.)

**3.** QSI's fiscal year runs from April 1 through

(AC ¶ 44.) Plaintiffs point to approximately thirty allegedly fraudulent statements made during the Class Period at various conferences and earnings calls and in written publications, including a shareholder letter. For example, at the Goldman Sachs Global Healthcare Conference on June 9, 2011, Defendant Holt, in response to a question about the greenfield market, stated, "it's greenfield for the most part ... and I think it's going to be that way for a while." (AC ¶ 60.) In regards to QSI's pipeline, Scott Decker, President of QSI's NextGen division, stated at the October 27, 2011 earnings call, "[I]f you look out 12—12 months and further, it's unprecedented with the amount of demand we see coming for our clients for rollout levels to the extent they never talked to us about the past, so it is flat but I wouldn't read much into that." (AC ¶ 66.) The Amended Complaint contends that these and similar statements were false and misleading because QSI had already begun to experience a slowdown in its greenfield sales starting in April 2011 and a decline in the sales pipeline beginning in the fourth quarter of FY2012.[4] (AC ¶ 63, 72, 81, 104.)

██ Plaintiffs further allege that QSI issued fraudulent and misleading EPS guidance for FY2012 and FY2013. In late October 2011, Defendant Plochocki announced a projected revenue growth range of 21% to 24% and an EPS growth of 29% to 33% for FY2012. (AC ¶ 64.) These EPS projections were reaffirmed in January 2012. (AC ¶¶ 73, 75.) On May 17, 2012, QSI announced its results for FY2012—QSI had met its revenue growth projections at 22%, but "due to delays in closing several fourth-quarter opportunities, as well as recognition of revenue related to a large customer implementation," EPS growth was only 21%. (AC ¶ 93; Dkt. No. 29–1 Declaration of Katherine A. Rykken ISO Defendants' Motion to Dismiss ["Rykken Decl. 1"], Exh. 13.)[5] Looking ahead, QSI projected a 20% to 24% revenue growth and a 20% to 25% EPS growth for FY2013. (AC ¶ 93.) The FY2013 projections were re-stated in late June 2012 and early July 2012 in connection with proxy materials for a pending proxy contest. (AC ¶¶ 107–108.) On July 26, 2012, QSI issued a press release declining to affirm the FY2013 guidance, given that record revenues for the first quarter

March 31. (AC ¶ 7 n. 3.)

4. The Amended Complaint relies in large part on pleadings in a separate lawsuit by a former QSI director and second largest shareholder, Ahmed Hussein. According to Mr. Hussein, Defendants' revenue and earnings projections during the Class Period "lacked any objective basis" as the Individual Defendants knew that "QSI's financial performance had begun slowing down in late 2011." (AC ¶ 46.) This decline in sales is purportedly corroborated by seven confidential witnesses ("CW") who were former QSI employees. (AC ¶ 48.)

5. Defendants request that the Court take judicial notice of 43 documents submitted as exhibits in support of the motion to dismiss. (Dkt. Nos. 29–2, 35–1.) These documents include various Securities Exchange Commission ("SEC") filings by QSI, transcripts of QSI's earnings calls and statements made during healthcare conferences, proxy materials, and printouts of QSI's presentation slides. "Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.2010) (internal quotation marks and citations omitted). Here, the vast majority of the documents are referenced in the Amended Complaint and Plaintiffs neither oppose the requests for judicial notice nor question the authenticity of the documents. Thus, the Court takes judicial notice of these 43 exhibits.

had come in at just 18% and there was a decline in EPS and net income from the previous year's quarter. (AC ¶ 110; Rykken Decl. 1, Exh. 24 ["July 26 Form 8–K"] at 621.) In the same press release, Defendant Plochocki explained that "overall results were impacted by lower than expected revenue from large, higher margin software system sales." (July 26 Form 8–K at 621.)

Plaintiffs generally allege that QSI's statements were fraudulent because they were issued contemporaneously while QSI's new bookings and sales pipeline were declining. (AC ¶ 46, 48–56.) The Amended Complaint alleges that each of the fraudulent statements was material to investors, pointing to the positive reviews and recommendations to purchase QSI stock by analysts that followed each of QSI's public statements. (AC ¶¶ 62, 78, 99, 102.) The Amended Complaint also alleges that the Individual Defendants possessed the requisite scienter because they were aware of QSI's flagging financial performance as of late 2011. In support of this allegation, Plaintiffs point to the Individual Defendants' involvement with the core operations of QSI and their access to real-time data about the sales cycle. (AC ¶¶ 14, 118–119, 145.) The Amended Complaint further points out Defendant Plochocki's sale of 87% of his QSI stock during the Class Period and letters from the SEC seeking clarification of QSI's EPS projections as indicators of scienter. (AC ¶¶ 134–144.)

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to

offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)). The district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

 The PSLRA imposes a heightened pleading standard in private securities litigation and requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Plaintiffs must additionally state with particularity "facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or de-

fraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (internal quotation marks and citation omitted); *see also* 15 U.S.C. § 78u–4(b)(2).

## IV. ANALYSIS

■ In this action, Plaintiffs assert two causes of action—one against all Defendants, and one against Defendant Plochocki individually—for violations under § 10(b) of the SEA and Rule 10b–5.[6] The basic elements of a claim under § 10(b) and Rule 10b–5 are: (1) a material misrepresentation or omission of fact; (2) scienter; (3) a connection with the purchase or sale of a security; (4) transaction and loss causation; and (5) economic loss. *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014 (9th Cir.2005).

The PSLRA, however, exempts from liability certain "forward-looking statements" through a safe harbor provision. *See* 15 U.S.C. § 78u–5(c). A forward-looking statement includes, *inter alia*, statements containing a projection of revenues, income, earnings per share, and other financial items; statements of plans and objectives of management for future operations; and statements of future economic performance. *Id.* § 78u–5(i)(1)(A)-(C). Additionally, "any statement of the assumptions underlying or relating to any [such] statement" is classified as forward-looking. *Id.* § 78u–5(i)(1)(D). Once it is determined that the statement is indeed forward-looking, the safe harbor provides two alternative paths to immunity where: (1) the statement was accompanied by meaningful cautionary language, *id.* § 78u–5(c)(1)(A); or (2) plaintiff fails to provide the projections were made with actual knowledge that they were false or misleading, *id.* § 78u–5(c)(1)(B). *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112–13 (9th Cir. 2010) (holding that the safe harbor provides two independent grounds for protection).

### A. Forward–Looking Statements

The majority of Defendants' allegedly fraudulent statements are forward-looking. Statements containing a projection of revenues and earnings per share fall squarely within the PSLRA's definition of forward-looking statements. 15 U.S.C. § 78u–5(i)(1)(A). As such, any projections by Defendants about revenue growth or EPS growth for FY2012 and FY2013 are properly classified as forward-looking and may qualify for the safe harbor. For example, statements such as "earnings per share are expected to grow between 20 and 25 percent versus the 2012 fiscal year" and "[w]e're earmarked for a very strong year" are forecasts of future performance. (AC ¶¶ 73, 86.) Similarly, statements pertaining to the greenfield market and opportunities for growth in this area, as well as anticipatory statements about the future strength of pipeline sales, were also forward-looking expressions. For instance, statements about growing greenfield opportunities and the robust pipeline future amount to projections of future economic performance. (*See* AC ¶ 70; 15 U.S.C. § 78u–5(i)(1)(A).)

---

6. Plaintiffs also plead a third cause of action against all Defendants for violations of § 20(a) of the SEA. Claims under § 20(a), which provides that certain "controlling" individuals will be liable for a primary violation of federal securities law, are derivative claims and are thus contingent upon a finding of a § 10(b) violation. *Zucco Partners, LLC v. Di-* *gimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) ("Section 20(a) claims may be dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section 10(b)."). Because the Amended Complaint fails to state a primary violation of section 10(b), *see infra*, the Court does not conduct a § 20(a) analysis.

The Court recognizes that a few statements, particularly in reference to QSI's "current" pipeline may be classified as non-forward-looking, as they concern historical or current facts. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F.Supp.2d 1059, 1068 (N.D.Cal.2001). In regards to such statements, however, either Plaintiffs have not alleged that the historical results were incorrect, or the present statements amount to non-actionable puffery.[7] Barring these few exceptions, the alleged statements are forward-looking and, as discussed below, qualify for the safe harbor under either ground.

## B. Accompanying Meaningful Cautionary Language

■ The first ground of the safe harbor immunizes forward-looking statements that are accompanied by meaningful cautionary language that identifies "important factors that could cause actual results to differ materially." 15 U.S.C. § 78u–5(c)(1)(A)(i); *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1133 (9th Cir. 2004). Although the PSLRA does not require a listing of all variables that may change predicted results, "boilerplate language warning that investments are risky or general language not pointing to specific risks" is insufficient. *In re Copper Mountain Sec. Litig.*, 311 F.Supp.2d 857, 882 (N.D.Cal.2004).

■ As a preliminary matter, Plaintiffs contend that several of the alleged oral misstatements by Defendants were not accompanied by *any* cautionary language.

The challenged statements, however, were made by Individual Defendants during healthcare conferences and Defendants have provided the contemporaneous presentation slides that were used during these conferences. (*See* Dkt. No. 35–2 Declaration of Rykken Declaration ISO Defendants' Second for RJN ["Rykken Decl. 2"], Exhs. 39–43.) At each conference, an entire written slide dedicated to the safe harbor provision was shown. (*Id.*) Thus, the oral statements were accompanied by cautionary language, by way of the printed slide. *See In re Broadcom Corp. Sec. Litig.*, No. SACV01275GLTMLGX, 2004 WL 3390052 (C.D.Cal. Nov. 23, 2004) (applying safe harbor to oral statements referencing SEC filings with cautionary language). Plaintiffs do not contend that the other forward-looking statements, such as those made during earnings calls or in SEC-filed press releases, lacked accompanying cautionary language.

The cautionary statements that accompanied each of Defendants' forward-looking statements were sufficiently meaningful. The included language warns that the statement contains forward-looking statements, upon which "undue reliance should not be placed," given the number of risks and uncertainties involved. (*See, e.g.,* Rykken Decl. 2, Exh. 3 at 41.) Moreover, each cautionary statement identifies specific factors that may affect the forward-looking statements including, *inter alia,* volume and timing of systems sales and installations, length of sales cycles and installation process, impact of incentive payments under the ARRA on sales,

---

7. For example, during the January 26, 2012 earnings call, Defendant Plochocki stated that QSI had $183 million worth of pipeline. (AC ¶ 77.) That same figure was repeated on February 7, 2012 at a UBS Global Healthcare Services Conference. (AC ¶ 79.) Plaintiffs do not allege that this figure was false or misleading. Other statements describing the pipeline as "strong" or "robust" are not actionable because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (internal citation and quotation marks omitted).

the development by competitors of new or superior technologies, and political or regulatory influences in the healthcare industry. (*See, e.g.,* Rykken Decl. 1, Exhs. 3, 5, 7, 9, 11–12, 14; Rykken Decl. 2, Exhs. 39–43.) These factors are specific to QSI's EHR business and do not constitute generic warnings that any general business or corporation could import. *See In re Cutera,* 610 F.3d at 1112 (cautionary language identifying statements as forward-looking and risk factors "like Cutera's 'ability to continue increasing sales performance worldwide'" was adequate). Contrary to Plaintiffs' assertions, such warnings are not boilerplate; consequently, Defendants' forward-looking statements are protected by the safe harbor provision.

## C. Actual Knowledge of Falsity

 Additionally, the forward-looking statements fall under the second prong of the safe harbor because Plaintiffs fail to "state with particularity facts giving rise to a strong inference that defendant acted with the required state of mind." *See In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1085 (9th Cir.2002) (quoting 15 U.S.C. § 78u–4(b)(2)). In the case of forward-looking statements, the required state of mind is *actual knowledge* that [the statements] were materially false or misleading." *In re Cutera,* 610 F.3d at 1112 (emphasis in original). No accompanying cautionary statement is required for this prong of the safe harbor. *See id.* at 1113.

Plaintiffs allege that Defendants had access to real-time data on QSI's revenues and earnings and thus knew that QSI's sales and sales prospects were declining as early as April 2011. (AC ¶ 119.) The Amended Complaint further cites statements by CWs that Individual Defendants regularly monitored such data. (*See, e.g.,*

AC ¶ 112.) Plaintiffs vaguely describe the real-time data as "incorporat[ing] inputs from all operating entities," and make general assertions that this data revealed "daily sales activities, sales forecasts, and the projected value of accounts." (AC ¶ 7.) This falls short of the high pleading requirements for scienter, which requires a much more detailed and specific account of the contents of such data. *See, e.g., In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 985 (9th Cir.1999) (insufficient pleading of scienter where complaint cites officers' knowledge of reports without describing details of reports' contents, such as "specifics regarding ASIC chip shortages, volume shortages, negative financial projections, and so on"). The Amended Complaint also alleges that Individual Defendants were aware of the slowdown in business because of their involvement in QSI's daily operations and access to all material information regarding QSI's core operations. (AC ¶ 145.) Such allegations are wholly conclusory and are insufficient to support an inference of scienter. *See, e.g., In re Lockheed Martin Corp. Sec. Litig.,* 272 F.Supp.2d 944, 956 (C.D.Cal. 2003) (insufficient fraud allegations based on officers' role in the company, including "review[ing] the financial condition of the Company" and "receiv[ing] regular updates regarding the [company's] status").

Finally, Plaintiffs cite two additional facts to further bolster their scienter allegations. First, Plaintiffs point to the fact that Defendant Plochocki sold 87% of his QSI stock during the Class Period. Second, Plaintiffs cite two letters from the SEC commenting on QSI's projections in proxy materials. Although "suspicious" insider stock sales may be circumstantial evidence of scienter, such sale must be "dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Ronconi v. Larkin,* 253

F.3d 423, 435 (9th Cir.2001). Here, Defendant Plochocki's sale fails to show scienter because it was not a dramatic deviation from his prior trading practices. In fact, the Amended Complaint admits that Defendant Plochocki had a prior history of making a massive stock sale in September 2008. (AC ¶ 135.) Likewise, the SEC letters also fail to show Defendants' actual knowledge of falsity, as they only requested QSI to revise its proxy materials to discuss QSI's FY2013 projections and the underlying assumptions in the same place. (Rykken Decl. 1, Exhs. 17–19.) These allegations do not give rise to a strong inference of actual knowledge of falsity.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Due to the applicability of the safe harbor provision, the Amended Complaint suffers from fatal defects and is DISMISSED WITH PREJUDICE.

## ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

## I. INTRODUCTION & BACKGROUND

Lead Plaintiffs Arkansas Teacher Retirement System and the City of Miami Fire Fighters' and Police Officers' Retirement Trust brought this securities class action on behalf of all persons or entities who, during May 26, 2011 through July 25, 2012 (the "Class Period"), purchased or otherwise acquired the common stock of Defendant Quality Systems, Inc. ("QSI"), (collectively, "Plaintiffs"). In the Amended Complaint, Plaintiffs allege that QSI and its high-ranking directors and officers, Sheldon Razin, Steven Plochocki, and Paul Holt (collectively, "Defendants") made

false and misleading statements regarding revenue forecasts, sales pipeline figures, and greenfield sales projections. (Dkt. No. 26, Amended Compl. ["AC"].)

On June 20, 2014, Defendants brought a motion to dismiss, arguing, *inter alia,* that the alleged statements were forward-looking and protected by the safe harbor provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b). (Dkt. No. 29 ["Defs.' MTD"].) Specifically, Defendants argued that Plaintiffs had failed to show that Defendants made the alleged forward-looking statements with knowledge of their falsity and that the statements were accompanied by meaningful cautionary language. (*Id.*) In support of the latter proposition, Defendants requested judicial notice of numerous exhibits pursuant to the incorporation by reference doctrine and Federal Rule of Evidence 201. (Dkt. Nos. 29–2, 35–1.)

The Court granted the motion to dismiss with prejudice on October 20, 2014 based on the finding that the vast majority of the alleged statements were forward-looking and accompanied by meaningful cautionary language ("Order"). (Dkt. No. 39 [Order] at 1101–03.)[1] Additionally, the Court found that Plaintiffs had failed to allege that Defendants made the statements with knowledge of their falsity. (Order at 1102–04.) Currently before the Court is Plaintiffs' motion for reconsideration of the Order, or, in the alternative, a motion to amend. (Dkt. No. 40 ["Pls.' Mot."] at 3.) For the reasons provided below, the Court DENIES Plaintiffs' motion.

## II. LEGAL STANDARD

■ Plaintiffs move for reconsideration pursuant to Federal Rule of Civil Procedure 59 or, in the alternative, request leave

1. With respect to the few non-forward-looking statements alleged, the Court concluded that the statements either amounted to non-action-able puffery or that Plaintiffs had failed to allege that any of the "historical results were incorrect." (Order at 1102.)

to amend under Rule 15. Where, as here, final judgment has been entered, "a motion to amend the complaint can only be entertained if the judgment is first reopened under a motion brought under Rule 59 or 60." *Lindauer v. Rogers,* 91 F.3d 1355, 1357 (9th Cir.1996). The Court thus denies Plaintiffs' motion in the alternative and will only consider the Rule 59 motion for reconsideration.

■ The standard for obtaining reconsideration of a previously entered order is rigorous. The Ninth Circuit has held that reconsideration is appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993). In this district, Local Rule 7–18 provides that "a motion for reconsideration may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." Local Rule 7–18. "No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." *Id.; see also Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir.2000).

## III. ANALYSIS

Plaintiffs request reconsideration on the ground that the Court committed clear error when it dismissed the Complaint *with prejudice.* Plaintiffs do not dispute the dismissal—only that the Court should have granted leave to amend. (Pls.' Mot. at 2.) To that end, Plaintiffs proffer a number of purportedly new facts that they would allege if given the opportunity to bring a second amended complaint. Plaintiffs further contend that the Court erred by taking judicial notice of five PowerPoint slides that were shown at healthcare conferences during which Defendants made allegedly misleading statements.

### A. Dismissal with Prejudice

Plaintiffs seek reconsideration of the Court's decision to dismiss the Amended Complaint with prejudice, citing the liberal policy in favor of granting leave to amend and the Ninth Circuit decision in *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir.2003). Plaintiffs' arguments are unavailing.

■ Although the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995), the district court need not grant leave to amend if amendment of the complaint would be futile, *Kendall v. Visa U.S.A., Inc.,* 518 F.3d 1042, 1051–52 (9th Cir.2008). In granting the motion to dismiss, the Court found that all forward-looking statements fell within the safe harbor for two, independent reasons. (*See* Order at 1102 ["[T]he alleged statements are forward-looking and, as discussed below, qualify for safe harbor under *either* ground." (emphasis added) ].) The first reason was that the statements were accompanied by meaningful cautionary language; the second reason was that Plaintiffs had failed to show that the statements were made with knowledge of their falsity. (Order at 1102–04.) Having made such findings, the Court concluded that the Amended Complaint "suf-

fer[ed] from fatal defects" and denied leave to amend. *See Kendall,* 518 F.3d at 1051–52.

Relying heavily on *Eminence,* Plaintiffs contend that granting leave to amend was required, particularly given this "technical and demanding corner of the law" and the need to provide securities litigation plaintiffs with "court guidance" in drafting a sufficient complaint. *See Eminence,* 316 F.3d at 1052–53. However, *Eminence* does not stand for such a blanket rule and clearly states that dismissal with prejudice may be appropriate if "it is clear on de novo review that the complaint could not be saved by amendment." *Id.* at 1052 (citing *Chang v. Chen,* 80 F.3d 1293, 1296 (9th Cir.1996)). Indeed, the liberal amendment policy in the PSLRA context is warranted due to the "unprecedented degree of specificity and detail" required to plead scienter. *Id.* But the present case is not one where Plaintiffs could have fixed their errors after having received the Court's guidance. The rhetorical questions posed by the Ninth Circuit are instructive: "How much detail is *enough* detail? When is an inference of deliberate recklessness *sufficiently* strong?" *Id.* (emphasis in original). Such questions have no applicability here because the basis for the Court's dismissal with prejudice was *not* about Plaintiffs' failure to plead with requisite "specificity and detail." Rather, it was about a definitive legal bar via the safe harbor to Plaintiffs' claims—the affirmative finding that each of the forward-looking statements was accompanied by meaningful cautionary language. Such an error cannot be remedied.

### B. Plaintiffs' Proposed Amendments

Next, Plaintiffs point to a number of new facts that they could bring supporting materiality, falsity, and scienter. Plaintiffs also propose amendments, stylized as "new

allegations," that would demonstrate the insufficiency of the cautionary language. Plaintiffs fail to make the requisite showing for reconsideration under Local Rule 7–18. Plaintiffs do not state that the proposed facts (which arise during the Class Period) were not discoverable with the exercise of reasonable diligence or that such facts emerged after the Order was issued. Furthermore, Plaintiffs proposed amendments regarding the inadequacy of the cautionary language merely recycle the same arguments that were already presented in their opposition to the motion to dismiss. *See Kona Enters.,* 229 F.3d at 890 ("A Rule 59(e) motion may *not* be used to raise arguments or present evidence for the first time that could reasonably have been raised earlier in the litigation." (emphasis in original)). For instance, Plaintiffs contend that the cautionary language was insufficient because the stated risk factors—specifically, saturation and the ARRA—did not "relate directly" to the risks that actually materialized and that Defendants repeated the same risk disclosures without providing updates. (Pls.' Mot. at 6–11.) Both these arguments were presented in Plaintiffs' opposition, (Dkt. No. 32 ["Pls.' Opp'n"] at 21–22), and have already been rejected by the Court, (*see* Order at 1102–03).

In any event, the "new" facts purportedly demonstrating scienter are insufficient to revive Plaintiffs' complaint because of the preclusive effect of the cautionary language. As explained above, the applicability of the cautionary language prong of the safe harbor applied to all forward-looking statements as an independent ground for immunity. Thus, even if Plaintiffs were to allege new facts to "demonstrate that defendants' statements were made with actual knowledge of their falsity," (Pls.' Mot. at 14), this would not disturb the holding that the forward-looking statements were accompanied by meaningful cautionary language. For example, Plaintiffs contend

they would allege that Defendant Plochocki stated that QSI's "strong pipeline continues to get stronger and build momentum" and is "continuing to build up every quarter...." (Pls.' Mot. at 12.) Not only is this the same type of "anticipatory statements about the future strength of pipeline sales" that was deemed forward-looking, (*see* Order at 1101–02), but the statement was made at the same May 26, 2011 earnings call conference that this Court found was accompanied by cautionary language, (*see* Order at 1102; Dkt. 29–1, Decl. of Katherine A. Rykken ISO Defs.' MTD ["Rykken Decl."] Exh. 4, [safe harbor provision in Form 8–K for May 26, 2011 earnings call] ). The same is true for Plaintiffs' "new" statement by Defendant Plochocki that "all four units remain on target," made at the July 28, 2011 earnings call. (Pls.' Mot. at 12; *see* Rykken Decl. Exh. 6 [safe harbor provision in Form 8–K for July 28, 2011 earnings call].) [2]

Plaintiffs' already-presented arguments regarding the sufficiency of the cautionary language are equally unavailing. According to Plaintiffs' own cited case, the Seventh Circuit directly refutes Plaintiffs' contention that the risk factors must "warn of risks that ... actually materialized." (Pls.' Mot. at 7, 11); *see Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 730 (7th Cir.2004) (holding that securities law does not "demand prescience" and "[a]s long as the [defendant] reveals the principal risks, the fact that some other event caused problems cannot be dispositive"). Rather, the cautionary statement need only "identify[ ] important factors that could cause actual results to differ materially from those in the forward-looking statements." 15 U.S.C. § 78u–5(c)(1)(A). Likewise, the cautionary language is not rendered insufficient merely because Defendants utilized similar language in their cautionary disclosures throughout the Class Period.

## C. Judicial Notice of PowerPoint Slides

█ Finally, Plaintiffs seek reconsideration of the Court's decision to take judicial notice of the five PowerPoint slides submitted by Defendants. "On any motion to dismiss based [on the safe harbor], the court shall consider any statement cited in the complaint and any cautionary statement accompanying the forward-looking statement, which are not subject to material dispute, cited by the defendant." 15 U.S.C. § 78u–5(e). The Supreme Court affirmed that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Under the "incorporation by reference" doctrine, "a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.2010).

Citing *Daniels–Hall*, the Court took judicial notice of the PowerPoint slides. (Order at 1099 n. 5.) The Amended Complaint alleged that Defendants' misleading statements at the healthcare conferences were actionable and made without accompanying cautionary language. (AC ¶¶ 60, ·

---

**2.** Plaintiffs also claim that they will present new, quantitative statements regarding QSI's pipeline, but fail to specify what these statements would be and merely cite to statements from the dismissed Amended Complaint that the Court found to be puffery. (Pls.' Mot. at 12–13; Order at 1101–02.)

73, 79, 82–84, 92, 173; Pls.' Opp'n at 21.) Disputing this characterization, Defendants sought judicial notice of the Power-Point slides presented at the conferences and cited the cautionary language contained therein. *See* 15 U.S.C. § 78u–5(e). Importantly, the Court found that Plaintiffs had waived any objection to the request for judicial notice of the PowerPoint slides. (*See* Order at 1099 n. 5.) Plaintiffs now contend, however, that they had insufficient opportunity to object because the slides were raised in Defendants' reply brief. This argument is simply not true. Although submitted alongside the reply brief, the request for judicial notice of the slides was filed as a separate memorandum, (*see* Dkt. No. 35–1), and Plaintiffs were free to submit an objection to the request. Moreover, the request for judicial notice of the slides was submitted on September 11, 2014—nearly six weeks before the October 20 hearing. Plaintiffs had ample opportunity to object but failed to do so.

Indeed, the Court specifically questioned the attorneys at the hearing about the authenticity of the slides to remove any doubt about their admissibility. (*See* Dkt. No. 44, Tr. of Oct. 20, 2014 Hearing on MTD ["Tr."] 2:24–4:1, 16–20.) Defendants' counsel represented that the slides with the safe harbor warnings were projected at the conference and additionally represented that the slides were posted to a website. (Tr. 4:20–21.) In response, Plaintiffs' counsel only disputed the latter point, noting that "whether these slides were in fact widely distributed, posted to the website" was a factually intensive dispute but further reassured the Court "I don't think we need to get into that dispute." (Tr. 10:13–17.) Later in the hearing, Plaintiffs' counsel again reiterated, "We don't oppose the court take judicial notice within the limits of proper judicial notice that these [slides] exist, but we do not accept them for the truth of the mat-

ters asserted or for the additional representations that these warnings were widely disseminated." (Tr. 18:15–21.) Plaintiffs' counsel later added, "[W]e did object, by the way, to appendix B as cumulative and exceeding the page limit." (Tr. 19:16–18.)

Nothing in the record amounts to a challenge of the "authenticity of the copy [of the slides] attached to the 12(b)(6) motion." *See Daniels–Hall*, 629 F.3d at 998. The Order did not rely on Appendix B or on the representation that the slides were widely publicized through a website. Nor did the Order accept the slides for the truth of the matters asserted—that actual results of QSI's performance may be affected by the factors listed. *See City of Roseville Employees' Ret. Sys. v. Sterling Fin. Corp.*, 963 F.Supp.2d 1092, 1108 (E.D.Wash.2013) (distinguishing judicial notice for the truthfulness of the out-of-court representations of the documents from judicial notice of the fact that such documents exist and thus, that the representations were made). Rather, the Court relied on the slides only for the proposition that the slides, as submitted by Defendants, were presented at the same health-care conferences where Defendants purportedly made misleading statements. (Order at 1102.) Given Plaintiffs' failure to object and this Court's duty to inquire into "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, [and] not whether any individual allegation, scrutinized in isolation, meets that standard," *Tellabs, Inc.*, 551 U.S. at 322–23, 127 S.Ct. 2499, it was appropriate to take judicial notice of the slides.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED.