FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MACOMB COUNTY EMPLOYEES' RETIREMENT SYSTEM, Lead Plaintiff, *Plaintiff-Appellant*, <br><br> and <br><br> CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, <br> *Plaintiff*, <br><br> v. <br><br> ALIGN TECHNOLOGY, INC.; JOSEPH M. HOGAN; JOHN F. MORICI; JULIE TAY, <br> *Defendants-Appellees.* | No. 21-15823 <br><br> D.C. No. 3:20-cv-02897-MMC <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted March 10, 2022
San Francisco, California

Filed July 7, 2022

Before:  J. Clifford Wallace, Sidney R. Thomas, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown

## SUMMARY*

### Securities Fraud

The panel affirmed the district court's dismissal of a securities fraud class action under §§ 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and Rule 10b-5.

Plaintiff alleged that corporate executives at Align Technology, Inc., a medical device manufacturer best known for selling "Invisalign" braces, misrepresented their company's prospects in China.

The panel rejected as unsupported defendants' argument that their statements could not be considered false at the time they were made because plaintiff did not allege sufficient facts to make plausible the inference that the rate of Align's growth in China had begun to decline significantly when the challenged statements were made.  The panel concluded that former employees' reports, viewed alongside circumstantial evidence of the short period of time between the twelve challenged statements and the downturn of Align's prospects in China, sufficiently supported the inference that Align's growth in China had slowed materially when the statements were made.

* This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that the district court correctly found that six of the challenged statements were non-actionable "puffery," which involves vague statements of optimism expressing an opinion that is not capable of objective verification. The district court also correctly found that the remaining six statements did not create a false impression of Align's growth in China and so were not actionable. Having determined that all of the challenged statements were non-actionable, the panel declined to reach issues of scienter and control-person or insider-trading liability. The panel rejected the argument that because Align touted positive facts about China, the company had a duty to disclose negative facts in order to make the statements not misleading.

## COUNSEL

Javier Bleichmar (argued), Bleichmar Fonti & Auld LLP, New York, New York, for Plaintiffs-Appellants.

Shay Dvoretzky (argued) and Peter A. Bruland, Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Peter B. Morrison, Virginia F. Milstead, and Mayra Aguilera, Skadden Arps Slate Meagher & Flom LLP, Los Angeles, California; for Defendants-Appellees.

**OPINION**

McKEOWN, Circuit Judge:

Securities actions often ask courts to distinguish between corporate braggadocio and genuinely false or misleading statements. This is one of those cases. In reviewing the dismissal of this class action, we consider whether corporate executives misrepresented their company's prospects in China to such an extent that their statements were actionable under our securities laws. After a careful review of the record, we conclude that the district court did not err in determining that all twelve challenged statements were non-actionable.

**BACKGROUND**

For the better part of twenty years, Align Technology, Inc. ("Align")—a medical device manufacturer that is best known for selling clear, plastic "Invisalign" braces—enjoyed skyrocketing growth. At the beginning of 2002, the company had served roughly 44,000 customers, but by 2019 that number had grown to 7 million. During much of that period, the growth was driven primarily by international sales, especially in China: Between 2013 and 2017, shipments of Invisalign cases to China increased by an average of 88 percent each year, and then by another 91 percent in 2018. Indeed, every quarter in 2017 and 2018, Align's year-over-year revenue growth rate in China hovered between 70 percent and 100 percent.

But then the trouble began. At the start of 2019, Align's Chinese growth rate dipped slightly, apparently due to increased competitive pressure and diminished consumer demand, and in the second quarter of that year the rate fell to between 20 and 30 percent. As news of this fall reverberated

across the market, Align's stock dropped by roughly 27 percent, from $275.16 per share on July 24, 2019, to $200.90 per share on July 25, 2019, erasing approximately $5.4 billion in shareholder value.

A year later, Macomb County Employees' Retirement System ("Macomb"), a Michigan-based pension plan, filed suit against Align (and several of its senior executives) on behalf of itself and all others that acquired Align common stock between April 25, 2019, and July 24, 2019 (the "Class Period"), and were damaged thereby. Macomb alleged that several Align senior executives had "misrepresent[ed]" Align's growth in China throughout the second quarter of 2019, claiming strong numbers despite knowing (or recklessly disregarding) that the growth rate in China had slowed significantly. According to Macomb, Align executives made twelve statements during the Class Period that are actionable under Sections 10(b), 20(a), and 20A, as well as Rule 10b-5, of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* ("Exchange Act" or "Act").

The district court dismissed the action with leave to amend, holding that the majority of the challenged statements constituted non-actionable puffery and the rest were not false or misleading. Instead of amending the complaint, Macomb requested a final judgment, so the district court dismissed the action with prejudice. Macomb appealed.

## ANALYSIS

We review de novo a district court's dismissal for failure to state a claim, "tak[ing] all allegations of material fact as true and constru[ing] them in the light most favorable to the nonmoving party." *In re Quality Sys., Inc. Sec. Litig.* (*Quality Systems*), 865 F.3d 1130, 1140 (9th Cir. 2017).

Section 10(b) of the Act prohibits using "any manipulative or deceptive device" that contravenes "such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b).  Pursuant to this section, Rule 10b-5 prohibits making "any untrue statement of a material fact" or omitting "a material fact necessary" to make a statement "not misleading."  17 C.F.R. § 240.10b-5(b); *see also In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To recover damages for violations of Section 10(b) and Rule 10b-5, as Macomb is seeking to do, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (internal citations and quotation marks omitted). Only the first two elements are at issue here.

A complaint alleging a violation of Section 10(b) of the Exchange Act must meet both the heightened pleading requirements for fraud claims under Fed. R. Civ. P. 9(b), which requires that the complaint "state with particularity the circumstances constituting fraud," and the "[e]xacting pleading requirements" of the Private Securities Litigation Reform Act ("PSLRA").  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* (*Tellabs*), 551 U.S. 308, 313 (2007).  The PSLRA requires plaintiffs to state with particularity the facts constituting the alleged violation.  *Id*.  These "heightened pleading requirements for securities fraud cases . . . present no small hurdle for the securities fraud plaintiff." *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (citation omitted).

## I.   UNSUPPORTED PREMISE

As a threshold matter, Align asks this court to affirm the district court on the narrow ground that Macomb's complaint is based on an unsupported premise.  Macomb's complaint rests on the premise that Align's rate of growth had, in fact, "significantly declined" by the time Align's executives were touting the company's growth in China in May and June of 2019.  But, according to Align, it is possible that the rate of growth only started to decline "significantly" *during* the Class Period (which lasts until July 24, 2019).  Because, Align continues, Macomb has not alleged sufficient facts to make plausible the inference that the rate of growth had begun to decline "significantly" by the time the Align executives made the challenged statements, the statements cannot be considered false at the time they were made, and therefore they are not actionable.  *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012) (holding that for statements to be actionable under the PSLRA, they must have been "false or misleading at the time they were made").  We reject this argument as unsupported.

It is settled precedent that the passage of just a short period of time between executives' rosy statements about their company's prospects and a downturn in those prospects is "circumstantial evidence" that the challenged statements "were false when made." *Fecht v. Price Co.*, 70 F.3d 1078, 1083 (9th Cir. 1995).  In *Fecht*, for instance, the passage of two-and-a-half months was a sufficient "shortness of time" to be considered "circumstantial evidence that the challenged statements were false when made." *Id*.  Here, just three months passed between the first challenged statement and the revelation of Align's downturn in China.

In addition, *Fecht* demands that we accord such circumstantial evidence "more weight" where there is no

"intervening catastrophic event" that might suggest a later, abrupt downturn, such that the executives' earlier statements may not, in fact, have been false. *Id.* at 1083–84. Here, as in *Fecht*, there was no such catastrophic event.

Macomb has provided additional evidence to support the inference that Align's growth rate was declining substantially at the time of the challenged statements. Multiple reports from former employees support the inference that Align's growth in China had slowed materially when the challenged statements were made in late April, May, and June 2019. For instance, one analyst's report described "clear, early indications as of April 1, 2019 that Align's growth in China had slowed . . . and that data was available to executives to monitor." Viewed alongside the short period of time between the challenged statements and the downturn in Align's prospects in China, Macomb has alleged sufficient evidence to support the inference that Align's growth in China had slowed materially when the challenged statements were made in late April, May, and June 2019. Macomb's complaint does not rest on an unsupported premise.[1]

---

[1] Align contends that *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001), supports the opposite conclusion. This case is not like *Ronconi*. There, the plaintiffs inadequately pleaded falsity because the complaint "fail[ed] to describe, chart or graph what sales actually did" and failed to "identify any documents or facts suggesting that the defendants knew that the growth rate was not accelerating." *Ronconi*, 253 F.3d at 431. By contrast, Macomb has explained "what sales actually did" (i.e., sales growth in China fell from close to 70% to 20–30% in one quarter), *id.*, and Macomb pointed to specific systems and reports that executives allegedly reviewed indicating slowing growth.

## II. PUFFERY

Turning to the challenged statements, we hold that the district court correctly found that six were non-actionable "puffery." Corporate "puffing" involves "expressing an opinion" that is not "capable of objective verification." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quoting *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)). These "vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.* (*Intuitive Surgical*), 759 F.3d 1051, 1060 (9th Cir. 2014) (internal quotation marks omitted) (quoting *In re Cutera Sec. Litig.*, 610 F.3d at 1111).

The six challenged statements that the district court determined to be puffery are as follows:

> 1. During an April 24, 2019, earnings call, Chief Executive Officer Joseph Hogan stated in response to analyst questions about Align's international business, "[w]e still have a great business in APAC from a growth standpoint overall," and "China is a great growth market for us."

> 2. At a healthcare conference on May 14, 2019, Chief Financial Officer John Morici said, "China . . . gets a lot of attention. And rightly so, it's a huge market opportunity for us."

3. At a dental and veterinary conference on May 29, 2019, in response to an analyst question about growth rates in the Asia-Pacific (i.e., APAC) region, Morici responded, "we see tremendous growth in APAC, in China in particular."

4. At the same conference, in response to an analyst question probing deeper about China, Morici stated, "we're seeing tremendous growth."

5. At the same conference, Morici said, "[t]he dynamics in China are really good for us . . . . [T]he appetite for growth and new technology adoption in China has been great for us. And as you mentioned, the economics work well for us."

6. At a healthcare conference on June 5, 2019, Morici also described China as "a market that's growing significantly for us" with "[g]reat economics."

These six statements plainly fit beneath the umbrella of puffery. All use vague, generically positive terms, describing China as "a great growth market," "a huge market opportunity," "a market that's growing significantly for us," and possessing "really good" "dynamics," and describing Align's performance there as "tremendous" and "great." Such characterizations are not "objectively verifiable." *Retail Wholesale*, 845 F.3d at 1276. None of these six statements present the kind of precise information on which investors rely "[w]hen valuing corporations." *In re Cutera Sec. Litig.*, 610 F.3d at 1111.

Contrary to Macomb's assertions, the district court did not err by failing to "consider the context" in which these six statements were made.  Although "general statements of optimism" made against a clearly pessimistic backdrop "may form a basis for a securities fraud claim," *Intuitive Surgical*, 759 F.3d at 1060 (citation omitted), this was not the case here.  Significantly, at the time Align's executives made the six challenged statements, the company's sales were *still growing* in China, albeit at a diminished rate, so these feel-good descriptions from Align's executives did not "affirmatively create[] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]."  *Quality Systems*, 865 F.3d at 1144 (quoting *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002)).

## III.  OTHERWISE NON-ACTIONABLE STATEMENTS

We next hold that the district court correctly found that the remaining six statements did not create a false impression of Align's growth in China and so were not actionable.  We briefly address each of these six statements below.

Three of the statements contained factual assertions that Macomb's complaint does not contradict:

> 1.  At a dental and veterinary conference on May 29, 2019, in response to an analyst question whether he saw China as "fastest growth, highest [average sales price] that should remain in place for the next couple of years," Morici stated, "[China] is higher [average sales price].  They start with a higher list price. They have very complicated cases, comprehensive cases,

and we've invested from a treatment planning to be in country, speak the same language, reduce the cycle time between having iTero [a digital scanner of patients' teeth sold by Align] in China. We introduced that in second quarter of last year. We went from almost no cases sent digitally to almost 50% of the cases sent digitally within China.

2. At a healthcare conference on June 5, 2019, in response to an analyst question about competition in China, Morici responded, "Great economics there from the standpoint that massive population, growing middle class, we have higher list prices, higher [average sales prices] in China, very complicated cases, a lot of orthodontists that we sell to, selling more and more to hospitals . . . ."

3. At a healthcare conference on June 11, 2019, an analyst asked whether Align had seen the same increase in Invisalign uptake after placing iTero scanners into the market as the company had in the U.S. Morici responded, "Yes . . . [iTero] drives higher and higher amount of Invisalign volume."

We observe that Macomb's complaint contains no allegations contrary to the assertions regarding Align's average sales price in China, the relative complexity of the cases, the "cycle time," China's "massive population," China's growing middle class, iTero's effects on driving

higher Invisalign volume, etc.   As a result, these three statements are not actionable under our securities laws.

A fourth statement was an accurate assessment of Align's *past growth* when considered in context:

> 4. At a healthcare conference on May 14, 2019, in response to an analyst question about competitors absorbing market share over a period of several years, Morici stated, "whether it's in China or U.S. or other places, we've been competing against many of these companies that I mentioned for a number of years and still been able to grow as we have."

Read in light of the analyst's question, a reasonable investor would understand the phrase "grow as we have" to refer to Align's historical growth rate in China over at least the prior year if not longer.  Considering the context, this statement would not "give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists" sufficient to make the statement actionably misleading.  *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 691 (9th Cir. 2011) (internal quotation marks and citation omitted).

A fifth statement was an assessment of the effect of a competitor's entry into the market:

> 5. During an April 24, 2019, earnings call, Hogan stated in response to analyst questions about how Align could continue to grow in China as quickly as they historically had, "China is a great

growth market for us," and "Straumann's [the competitor] move with third- or fourth-tier player from a clear aligner standpoint, I don't see that as dramatic effect on this market now or in the immediate future at all."

The Align executive's optimistic prediction was not a clearly untrue or misleading gloss. Macomb failed to plead sufficient facts to establish that the competitor's presence in China *caused* the slowdown in Align's growth, especially considering that the complaint referenced at least two other competitors in addition to Straumann (SmileDirectClub and Angel Align) that were putting pressure on Align in China. So, the executive's assertion was not "false when made." *Fecht*, 70 F.3d at 1083.

This leaves a final statement contained in Align's May 2, 2019, Form 10-Q:

> 6. "Demand for our products may not increase as rapidly as we anticipate due to a variety of factors including a weakness in general economic conditions."

Macomb never argued on appeal that this sixth statement was actionable, so that argument was waived. *Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1148 (9th Cir. 2016). Even if this argument were not waived, the statement presents no concrete assertions that could render it actually false or trigger a duty to disclose additional information. "Disclosure is required … only when necessary 'to make … statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (quoting 17 C.F.R. § 240.10b-5(b)).

## IV.    REMAINING MATTERS

Having determined that all of the challenged statements are non-actionable, we can quickly dispense with Macomb's remaining arguments.  We decline to reach the matters of scienter and control-person or insider-trading liability.**[2]**

And we reject Macomb's argument that because Align touted "positive facts about China," the company had "a duty to disclose negative facts in order to make the statements not misleading."  Our securities laws "do not create an affirmative duty to disclose any and all material information." *Id*.  Because all twelve challenged statements are non-actionable, Align had no duty to provide additional information to render those statements "not misleading." *See Retail Wholesale*, 845 F.3d at 1278 (no duty to disclose where statements did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists").

**AFFIRMED.**

---

**[2]** To prevail on claims for violations of Section 20(a), 15 U.S.C. § 78t(a) (creating joint and several liability for any person who controls a person liable for violating the Act), or Section 20A, 15 U.S.C. § 78t-1(a) (creating liability for anyone who violates the Act or its regulations "by purchasing or selling a security while in possession of material, nonpublic information"), "[a] plaintiff[] must first allege a violation of § 10(b) or Rule 10b-5." *Lipton v. Pathogensis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).  Thus, whether Align violated Section 10(b) or Rule 10b-5 is a threshold issue. Because we agree with the district court that Macomb failed to state a claim under Section 10(b) or Rule 10b-5, Macomb is likewise unable to state a claim under Sections 20(a) or 20A.