NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 31 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MARTIN SOHOVICH, On behalf of himself and all others similarly situated,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>AVALARA, INC.; SCOTT MCFARLANE; BRUCE CRAWFORD; MARION FOOTE; EDWARD GILHULY; WILLIAM INGRAM; MARCELA MARTIN; TAMI RELLER; BRIAN SHARPLES; RAJEEV SINGH; SRINIVAS TALLAPRAGADA; KATHY ZWICKERT,<br><br>Defendants - Appellees. | No. 24-1646<br><br>D.C. No. 2:22-cv-01580-MJP<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted March 4, 2025
San Francisco, California

Before: GOULD and NGUYEN, Circuit Judges, and BENNETT, District Judge.[**]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

Martin Sohovich filed a class action suit against Avalara Inc. and its Board of Directors (collectively, "Avalara") alleging violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 and SEC Rule l 4a-9.  He alleges that Avalara misrepresented the fairness of the company's $8.4 billion sale to Vista Equity Partners Management, LLC through false and misleading Proxy statements and financial projections.  The district court dismissed the case with prejudice based on Sohovich's failure to adequately plead the objective falsity or misleading nature of any of the Proxy statements or Projections.  Sohovich timely appealed.

We have jurisdiction under 28 U.S.C. § 1291.  Our review is de novo and "we accept all factual allegations as true and view them in the light most favorable to Plaintiffs.  In addition to the factual allegations in the complaint, we may consider any materials incorporated into the complaint by reference." *Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc*., 63 F.4th 747, 763 (9th Cir. 2023).[1] To survive dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In addition, the Private Securities Litigation Reform Act or the "PSLRA imposes formidable pleading requirements to properly state a claim and avoid dismissal under Rule 12(b)(6)." *Glazer*, 63 F.4th at 765 (cleaned up).  "To plead

---

[1] Avalara's unopposed motion to supplement or correct the record with the full copy of its "Analyst Day" presentation is granted.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining the incorporation by reference doctrine).

*falsity* adequately under the PSLRA, the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id*. (citing 15 U.S.C. § 78u-4(b)(1)).  "In doing so, the plaintiff must 'reveal the sources of his information.'" *Id*. (cleaned up).  But "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading" under the PSLRA's safe harbor provision.  *Id*. at 767 (cleaned up); 15 U.S.C. § 78u-5(i)(1)(B).  Also inactionable is puffery or subjective, "vague statements of optimism" about a company's value or performance.  *See In re Cutera Sec. Litig*., 610 F.3d 1103, 1111 (9th Cir. 2010).

Applying these principles, we affirm in part, reverse and vacate in part, and remand.

1.  At the outset, the PSLRA's safe harbor does not apply here.  The Proxy's statements that the projections were "prepared on a reasonable basis" or "reflected the best currently available estimates and judgments" are "not forward-looking." *See In re Quality Sys., Inc. Sec. Litig*., 865 F.3d 1130, 1141 (9th Cir. 2017).  They are instead statements about the preparation of, and basis for, the projections that incorporated then-existing, verifiable facts.  The district court's meticulous

analysis of the issue was therefore correct.[2]

2. The Proxy's statements about Avalara's challenges with new and upsell bookings are not objectively false or misleading. Avalara never stated that it did not need new bookings, and Avalara's purportedly contradictory statements indicating it was "doing well" are puffery. *See In re Cutera*, 610 F.3d at 1111 ("[I]nvestors do not rely on vague statements … like 'good,' 'well-regarded,' or other feel good monikers"). The "numerically specific" figures Sohovich says Avalara emphasized do not render the puffery actionable. Avalara did not tout 25% growth in Q1 2022 upsell bookings "to claim that the company would not need any new bookings," and the Analyst Day materials citing the 25% figure reveals that 25% is in fact lower than the upsell growth rate of 35% in 2020 and 44% in 2021. The 116% net retention rate, meanwhile, refers to cross-sell, not upsell. The district court thus properly rejected this claim.

3. The district court also properly dismissed Sohovich's claims regarding the Proxy's statement on Q2 2022 results being "below management expectations." Determining whether a claim survives requires the court to consider context and apply "judicial experience and common sense." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The district court's observation that "public guidance differs from management's own expectations," especially given that Q2 2022 was the first

---

[2] The parties' dispute about whether the issue was preserved is thus immaterial.

relevant quarter where Avalara failed to beat analysts' revenue expectations, was therefore not an "improper inference" or error.

4. The district court correctly found that the Proxy's statements about the impact of lost business from Partner A and other international risks were not objectively false or misleading. Aside from being puffery, Avalara's minimization of the impact of any potential loss of business from Partner A does not mean that the loss would have *no* impact on the company. Nor does the prospect of other international business make the projections false or misleading in light of Avalara's continued emphasis on other challenges in the area.

5. The district court also correctly found that the Proxy's statements about macroeconomic and compliance risks were not false or misleading. Avalara's rhetoric about its "resilience" and "insulation from macroeconomic risk" is puffery. *See Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003). Meanwhile, CEO Scott McFarlane's statement that by 2025, "80% of organizations will be forced" to use programs like Avalara is also "the kind of booster confidence any reasonable investor would expect from a CEO." *In re CornerStone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005). It is also too generalized and incapable of objective verification to be false or misleading when it was made. *Cf. In re Facebook, Inc.*, 87 F.4th 934, 948–49 (9th Cir. 2023) (finding statement that risks *could* materialize plausibly

false where "in fact, those risks had already materialized"). The district court therefore properly rejected these claims.

6. But the district court erred in holding that Avalara's statements about the Institutional Shareholder Services' (ISS) view of the sale was not objectively false or misleading. Sohovich alleges that Avalara quoted ISS's report without permission and that the report stated "'the merger consideration is a substantial discount to ALVR historic trading levels;'" that Altair's "'scathing criticism of the merger'" was "'credible;'" that Avalara "'has a strong market position focused on one of the two certainties in life, taxes,'" and it "'remains viable in the medium to long term with sufficient cash balances and cash flow to achieve management's operational objectives;'" that "ISS also found that '[t]he shift in narrative from [Avalara's] management is concerning, with a whiplash turn from positive comments … to current worries about employee attrition, European growth, product development, and squandered opportunities;'" and that ISS explicitly recommended a vote against certain parts of the deal, including the "golden parachute" proposal for the CEO, which had no "compelling rationale." These particularized allegations, credited as true, "'create an impression of a state of affairs that differs in a material way from the one that actually exists,'" i.e., that ISS's recommendation was not as approbatory as Avalara touted. *See In re Facebook, Inc.*, 87 F.4th at 948. Indeed, it was "cautionary."

That *some* of the report's unfavorable excerpts were filed by a third-party, in a separate SEC filing, does not render Avalara's statements about the report not false or misleading. *See Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 881 (9th Cir. 2008) ("Investors are not generally required to look beyond a given document to discover what is true and what is not. Ordinarily, omissions by corporate insiders are not rendered immaterial by the fact that the omitted facts are otherwise available to the public." (cleaned up)). And while Avalara is correct that the ISS ultimately issued a recommendation for the sale, "statements literally true on their face may nonetheless be misleading when considered in context." *Id*. at 886. "For that reason, the disclosure required" by law "is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead." *In re Convergent Tech. Sec. Litig.*, 948 F.2d 507, 512 (9th Cir. 1991).

7. The district court similarly erred in holding that the omission of inorganic growth from the May and July Projections was not objectively false or misleading. The omission is misleading, according to Sohovich, because "acquisitions have always been a material part of Avalara's growth story and management made clear that they would continue to be a part of the Company's DNA going forward." He cites a host of specific statements by Avalara's management from earnings calls, the Analyst Day presentation, and a press release as support. He underscores how Avalara had always included inorganic growth in its guidance, and when it did not,

it "explicitly stated as such," like when CFO Tennenbaum did so on Analyst Day. Sohovich also buttresses these claims with uncontested allegations that Avalara acquired "twenty-eight companies from 2007 to 2021, including twelve between 2018 to 2021." "Requiring more detail than those presently alleged would transform the PSLRA's formidable pleading requirement into an impossible one." *Glazer*, 63 F.4th at 769. Sohovich's plethora of particularized allegations plausibly suggests that the omission—and the lack of notice about such omission—could materially mislead a reasonable investor.

Avalara's counterarguments are unavailing. That it may not have an obligation to include inorganic growth in projections or that doing so could be too speculative and therefore potentially unlawful misses the point. Avalara has not cited specific acquisitions as a source of growth in its previous guidance, and the PSLRA's safe harbor protects Avalara's forward-looking statements so long as it is "accompanied by cautionary language or is made without actual knowledge that it is false or misleading." *Glazer*, 63 F.4th at 767 (cleaned up). And the fact that Avalara lost a potential acquisition during the sales process does not mean it planned to cease pursuing inorganic growth. As Sohovich points out, Avalara indicated quite the opposite in its communications, including right after the sale. Sohovich thus adequately pled the objective falsity or misleading nature of the

omission of inorganic growth from the projections.[3]

8. As just discussed, Sohovich has adequately pled the objective falsity of the Proxy's statements about the ISS report and the omission of inorganic growth from the projections. He may therefore have a viable Section 14(a) and Rule 14a-9 claim, which, in turn, suggests the viability of a section 20(a) claim. *See Glazer*, 63 F.4th at 765 (noting that section 20(a) liability is derivative of other Exchange Act violations). It was thus error for the district court to dismiss Sohovich's section 20(a) claim.

9. The district court properly dismissed Sohovich's claims about the Proxy supplement. Sohovich neither specifies, as in the district court, which Proxy statements were "regurgitate[d]" nor explains, with sufficient particularly, the reasons why the statements are misleading. *See* 15 U.S.C. § 78u-4(b)(1)(B).

---

[3] Avalara's attempt to distinguish *NECA-IBEW Pension Tr. Fund (The Decatur Plan) v. Precision Castparts Corp.*, which found the omission of inorganic growth in projections materially misleading, is also unpersuasive. Fed. Sec. L. Rep. ¶ 99,901 (D. Or. Oct. 3, 2017). That defendant Precision in *The Decatur Plan,* unlike Avalara, "focuse[d] on M&A first" and foremost does not defeat Sohovich's allegations at this stage. All well-pled "allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party." *Glazer*, 63 F.4th at 763. Sohovich has alleged, repeatedly and with particularity, that M&A has always been a part of Avalara's "DNA," much like Precision, which also engaged in significant M&A activity and likewise stated that M&A was in its "DNA." *See* Fed. Sec. L. Rep. ¶ 99,901. Notable, too, is Precision's disclosure of its omission of M&A in its forecasts—something Avalara did not do here. As Sohovich argues, it potentially makes Avalara's omission more misleading given the allegations of Avalara's history of including inorganic growth in its forecasts.

\* \* \*

In sum, we **REVERSE** the district court's holding that Sohovich did not adequately plead the objective falsity or misleading nature of Avalara's statements about ISS's recommendation of the sale and the omission of inorganic growth from the Projections. We also **VACATE** the district court's dismissal of Sohovich's section 20(a) claim. Because it declined to reach the other elements of Sohovich's Section 14(a) and Rule 14a-9 claim, the district court, on **REMAND**, should address, as to Avalara's statement about ISS's report and the Projections' omission of inorganic growth: (1) subjective falsity and negligence, except for CEO McFarlane; (2) materiality, to the extent the district court found them immaterial; and (3) loss causation. Afterward, the district court should consider whether Sohovich's claim amounts to a viable section 14(a) or Rule 14a-9 violation so as to trigger section 20(a) liability. We otherwise **AFFIRM.**

Each party shall bear its own costs.